# W. L. HARDING v. STATE.

No. A-3009.   Opinion Filed April 26, 1919.

(180 Pac. 391.)

1. **JURY—Additional Jurors—Summons.** It is not prejudicial error, when it is necessary to secure additional jurors for the trial of causes which are on call, for the court to order such additional jurors as he thinks proper to be drawn by the clerk and sheriff from the regular jury box of the county, and the jurors so drawn to be summoned by the sheriff.

2. **TRIAL—Requested Instructions—Given Instructions.** Where the instructions as a whole correctly state the law of a case, it is not prejudicial error to refuse requested instructions which are covered by the general instructions given.

3. **WITNESSES — Cross-Examination — Discrediting Prior Statement—Motive.** Cross-examination of defendant which tends to discredit his statements on direct examination, and which tends also to develop a motive on his part for the killing with which he is charged, is proper.

4. **Record—Error.** The entire record in this case fully considered, and found free from error.

*Appeal from Superior Court, Pottawatomie County;*
*Leander G. Pitman, Judge.*

W. L. Harding was convicted of murder, and he appeals.   Affirmed.

*Moman Pruiett, W. N. Maben,* and *Park Wyatt,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, W. L. Harding, hereinafter called defendant, was informed against for the murder of Mont Ballard, convicted, and sentenced to imprisonment in the penitentiary at McAlester, in the

state of Oklahoma, for the term of his natural life. To reverse the judgment rendered, he prosecutes this appeal.

The material evidence in this case is:

That on Saturday evening of the 24th day of June, 1916, there was a faker vending his wares in the town of Maud, in Pottawatomie county, with the usual crowd of onlookers around him; that the deceased was seen running "tolerably peart" about ten feet in advance of the defendant into the crowd, the defendant pursuing him "at a pretty fast gait" with a six-shooter in his hand; that the only thing said by the defendant was just before the defendant shot the deceased, which was "Look out!" and the only thing said by the deceased was "Oh!" as he fell shot to death by the defendant, "he has killed me;" that the deceased was in his shirt sleeves with his shirt buttoned up, and that no weapon was found upon his person or about where he fell; that, as soon as the shooting was over, some one in the crowd made an inquiry as to who did the shooting, and the defendant said, "I am the man that done it;" that some one of the crowd asked who the man was that was shot, and the defendant said, "That is the man I was after;" that when running from the defendant the deceased had nothing in his hands; that the deceased was shot in the back, and expired instantly.

There was evidence that the deceased and the defendant lived near each other; that the defendant was a widower; that up to a short time before the deceased was killed the deceased and defendant had been friends; and that they had fallen out, and had some difficulties, which mutual friends had tried to adjust, but failed.

The evidence was in conflict as to what occurred when the deceased and the defendant met in the town of Maud just before the fatal difficulty, the evidence on the part of

the state showing that the defendant with a pistol in his hand asked the deceased what in the hell he was doing there, to which the deceased did not reply; while on the part of defendant there was evidence that the deceased approached the defendant and asked what in hell he was doing there, and the defendant asked him, "Are you going to do what you said you would do?" and that the deceased replied, "You damn son of a bitch, I am going to kill you," and started off sideways with his hand on his pocket. There was also evidence that the general reputation of the deceased was that he was on overbearing man of violent temper, and that the general reputation of defendant was that he was a law-abiding citizen.

The defendant testified that on the 14th day of June preceding the killing the deceased shot at him in the road, and told him, "You God damn son of a bitch, I am going to kill you;" that the defendant endeavored, without success, to appease him, and that the deceased tried to cock his pistol, and could not, and that he said, "I can't kill you now; but, you damn son of a bitch, I will to-morrow, or the first time I see you," and rode off; that he (defendant) had known deceased eight years, and knew of his various acts of violence on others; that defendant believed, from what he knew of deceased's character, that he would carry out any threats he would make; that the deceased went in the direction of the crowd with his hand in his bosom; that defendant thought deceased was going into the crowd for protection to get a chance to kill him; and that he then shot the deceased in the honest belief that it was necessary to do so in his own defense.

On the cross-examination of the defendant it was asked if the deceased did not accuse him of having improper relations with Mrs. Ballard at the time deceased

shot at him, down in the road, and if he had not been down there with Mrs. Ballard in the pasture out towards the deceased's home, and if he did not overtake Mrs. Ballard there at night in company with S. D. White, and say to White, " 'Get to hell away from here; you see that road there, you hit it;' and you then yourself took Mrs. Ballard on through the woods?" To each of said questions the court sustained an objection.

In the petition in error 27 errors are assigned, but in the brief of defendant it is said:

"Of the many assignments of error set forth in the petition in error filed in this court on behalf of the appellant, we desire to urge in this brief only about six."

But in his brief he only argues the four following assignments of error:

(1) "That the court erred in summoning and impaneling a special venire by ordering and directing the court clerk and the sheriff to draw from the box a list of jurors to be known as a special venire to complete the regular panel which had been exhausted, over the protest and objections of the defendants, and after the defendant by his counsel in open court had requested the court to issue an open venire from the county, which request was denied and refused by the court, and to which action of the court in all matters was duly excepted to by the defendant at the time; that the court erred in overruling plaintiff in error's motion to quash the special panel ordered and drawn by the court from the jury box after the commencement of the trial for the purpose of finishing the panel of jurors to try said cause, to which action of the court the plaintiff in error duly excepted at the time."

(2) "For misconduct on the part of the county attorney and his assistant and special counsel in interrogating witnesses on incompetent, irrelevant, and immaterial matters which were highly prejudicial to the rights of the

defendant, and which did prejudice the defendant in the minds and estimation of the jury, and which influenced the jury in their ultimate determination of this cause, and particularly any questions and interrogations with reference to any pretended relationship between the plaintiff in error and the wife of the deceased."

(3) "Refusing to give requested instructions 1, 2, and 3."

(4) "The court erred in overruling the defendant's motion for a new trial."

It is insisted by the defendant that the only legal way to obtain additional jurors required for the trial of this cause was by an open venire, and that the court committed prejudicial error in ordering such additional jurors to be drawn from the jury box by the clerk and sheriff, and to be summoned by the sheriff, and with this insistence we cannot agree.

Section 3692, Revised Laws 1910, in part provides:

"* * * Additional and other drawing of as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the impaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court, the same shall be necessary, or, if, for any cause, the court, in its discretion, shall deem other jurors necessary. The court may excuse or discharge any person drawn and summoned as a grand or petit juror, whenever, in its discretion, such action shall be deemed expedient. * * *"

The court did not commit prejudicial error in the order made to secure the additional jurors required.

We concede that it would have been legal for the court to order the additional jurors required secured by an open venire, as requested by the defendant, as an "open

venire" is only another legal way of securing additional jurors to that provided by section 3692, *supra*.

It is also contended by the defendant that the only way jurors can be legally summoned is as provided by chapter 73, Session Laws 1913, p. 113, which provides for service by registered mail, and we are of the opinion that such contention should not be sustained, for the reason that said session law does not repeal the law authorizing the summoning of jurors by legal personal service. To hold to the contrary would in effect destroy the practical operation of securing additional jurors by open venire, and thus would delay trial and unreasonably and unnecessarily impede the trial courts. We are of the opinion that the mode of summoning jurors provided by said session law applies before a court convenes, and not when the court is in session and engaged in the trial of causes.

We are unable to see that the defendant's motion to quash the special panel of jurors in the case was founded "on a material departure from the forms prescribed by law, in respect to the drawing and the return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice," and therefore the court did not err in overruling said motion. Section 5482, Rev. Laws 1910. "When an objection to the panel is purely technical and does not affect the substantial rights of the defendant, such challenge should be overruled." *Malignon v. Territory*, 8 Okla. 439, 58 Pac. 505.

The defendant complains of alleged improper conduct on the part of the county attorney in the cross-examination of the defendant's witness Flusher, but, as no objection was made or exception saved in regard to said cross-examination of said witness, we will not review the same.

The defendant also complains of further alleged improper conduct of the county attorney in the cross-examination of the defendant by asking the defendant questions alleged not to be germane to his direct examination, and because said questions tended to show a motive for the commission of the crime charged, which had not been shown by the evidence for the state—illicit relations of the wife of the deceased and the defendant—and to thus wrongfully prejudice the jury against the defendant, notwithstanding the court sustained objections to said cross-examination complained of.

We think that said cross-examination was proper, as the answers thereto might have tended to prove a motive for the crime, and also to discredit the defendant, and the court would not have erred had he overruled the objections to said questions and required the same to be answered.

The defendant in support of his contention of said alleged improper conduct on the part of the county attorney cites and relies upon *Hager v. State,* 10 Okla. Cr. 9, 133 Pac. 263, and *Watson v. State,* 7 Okla. Cr. 590, 124 Pac. 1101, which said cases, under the evidence in this case, are not in point. The county attorney was not guilty of improper conduct in his said cross-examination of the defendant.

We have carefully examined the requested instructions which were refused by the court, but modified and given, and think that the instructions given, including the modified requested instructions, fairly state the law of the case, and if we eliminate the requested instructions as modified and given, the general instructions of the court practically cover the instructions requested, and that

therefore the court did not err in refusing to give said requested instructions.

We are of the opinion that the motion in arrest of judgment and the motion for new trial were each without merit, and properly overruled.

The judgment of the trial court is therefore affirmed.

DOYLE, P. J., and MATSON, J., concur.